### KLOTZ et al. v. SILVER et al.

(Supreme Court, Appellate Term. February 16, 1911.)

Bills and Notes (§ 397*)—Liability of Indorser—Notice of Dishonor.

If loss of a note excuses failure to comply with Negotiable Instruments Law (Consol. Laws, c. 38) § 134, it did not excuse plaintiffs for failure to comply with sections 160, 167, 174, requiring demand and notice of dishonor in order to charge and hold the indorser.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1038; Dec. Dig. § 397.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Abrom Klotz and another against Robert Silver and another, copartners doing business under the firm name and style of Silver & Ellis, and Isaac Nacht. From a judgment for plaintiffs, defendant Nacht appeals. Reversed, and new trial ordered.

Argued before HENDRICK, LEHMAN, and DELANY, JJ.

Joseph L. Pascal, for appellant.
Nathan H. Stone, for respondents.

HENDRICK, J. The action is brought upon a promissory note for $300. The note was made by Silver & Ellis to the order of Klotz Bros., and alleged to have been indorsed by defendant Nacht for the accommodation of defendants Silver & Ellis. The defendant Ellis was served with the summons, but did not appear or defend the action. The defendant Silver was not served.

Plaintiff testified:

"On November 15, 1909, Ellis, in company with Nacht, came to plaintiff's place of business. Nacht said: 'Mr. Ellis owes you $200. You give him $300; give him the balance. Ellis will give you a note, and I will indorse it. I will indorse the note for $300. You give him the difference between $200 and $300.' I made out a check for $94 in the presence of Ellis and Nacht. I got a note for $300 from Silver & Ellis, and Nacht indorsed it. I saw Nacht sign his name on the back of the note. The note was four months after date,

payable at 324 Canal street, signed, 'Silver & Ellis,' and Isaac Nacht indorsed on the other side. I saw Isaac Nacht sign his name on the back of that note. After I got the note, I left it in the safe."

The plaintiff was then asked by counsel:

"Four months after November ·15th, did you make a demand on Mr. Nacht and on Silver & Ellis for the payment of that $300? A. Yes. Q. You hadn't the note in your possession when you made the demand? A. No. Q. What did Nacht say to you? A. He wouldn't pay it. The Court: What did he say? A. He wouldn't pay it. The Court: 'I won't pay it?' A. Yes, sir. Q. And you haven't received any money on it? A. No, sir."

Plaintiff's bookkeeper testified:

"On November 16, 1909, defendant Nacht came to plaintiff's place of business and asked to see the note that he gave Klotz yesterday. I took out the note from the safe and handed it to Mr. Nacht, and he went out from the office to the factory. Ten minutes after I found the check for $94, made out by Mr. Klotz."

Assuming the truth of plaintiffs' case, and the loss of the note as described by plaintiffs' bookkeeper as an excuse for not being in a position to comply with section 134 of the negotiable instruments law (Consol. Laws, c. 38), it was nevertheless the duty of plaintiffs to comply with the law (sections 160, 167, and 174 of the negotiable instruments law), requiring due notice of dishonor in order to charge and hold the indorser. There is no evidence other than here set forth of the presentment and demand and due notice of nonpayment, which are conditions precedent to the liability of an indorser. The motion to dismiss the complaint at the end of plaintiffs' case was improperly denied.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.